## RECORD NO. 13-2073

### IN THE

# United States Court of Appeals

### FOR THE FOURTH CIRCUIT

---

MARY ANN YON CALLAHAM,
Estate of Mary Ann Yon Callaham by Linda Foster and Charlie Yon
personal representaties of the estate, personal representative
Linda Foster, personal representative Charlie Yon;
KIMBERLY CALLAHAM; TIMOTHY CALLAHAM;
LINDA FOSTER,

*Plaintiffs - Appellants,*

v.

UNITED STATES OF AMERICA,

*Defendant - Appellee.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

---

### OPENING BRIEF OF APPELLANTS

---

Donald E. Jonas
Donald E. Jonas Law Office
Post Office Box 99 (29071)
142 A.B. Frye Road
Lexington, SC 29073
(803) 309-2483 Telephone
jonasatty@gmail.com

*Counsel for Appellants*                    January 22, 2014

**LANTAGNE LEGAL PRINTING 801 East Main Street Suite 100 Richmond, Virginia  23219 (804) 644-0477**
**A Division of Lantagne Duplicating Services**

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____        Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____

(name of party/amicus)

_____

who is _____, makes the following disclosure:
        (appellant/appellee/amicus)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    YES    NO

2.    Does party/amicus have any parent corporations?    YES    NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    YES    NO
      If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?        YES     NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)        YES     NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?        YES     NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____        Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE

**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____            _____
(signature)                                                              (date)

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................... ii

JURISDICTIONAL STATEMENT .................................................... 1

ISSUES PRESENTED ...................................................................... 1

STATEMENT OF THE CASE ........................................................... 2

SUMMARY OF ARGUMENT I ....................................................... 11

STANDARD OF REVIEW ............................................................... 12

ARGUMENT:

I.   The Honorable District Judge erred in granting the Government's   Motion
     To Dismiss For Lack of Subject Matter Jurisdiction      pursuant to Rule
     12(b)(1), F.R.C.P. without allowing limited      discovery and sur-reply on
     the grounds that Plaintiffs' pleadings and claims did not involve
     intertwined factual and legal issues that would have entitled the Plaintiffs
     to such discovery to further establish equitable tolling of the requirements
     of  28 U.S.C. 2401(b) (Issues 1-4) ..................................................... 14

     A. Equitable Tolling of FTCA Claims ......................................... 15
     B. Court's procedure and determination that the Plaintiffs' claims
        be dismissed for lack of subject matter jurisdiction .................................. 19

SUMMARY OF ARGUMENT II ....................................................... 27

II.  The Honorable District Judge erred in concluding that the      Plaintiffs
     had not demonstrated sufficient evidence of misrepresentation/
     concealment by Dr. Aldrich and Plaintiffs' claims were not entitled to
     equitable tolling. (Issues 5, 6) ........................................................... 27

CONCLUSION ................................................................................ 33

CERTIFICATE OF COMPLIANCE .................................................. 34

CERTIFICATE OF FILING AND SERVICE ....................................... 35

i

TABLE OF AUTHORITIES

<u>Cases:</u>                                                                                      <u>Page</u>

<u>Adams v. Bain,</u>
        697 F.2d 1213 (4th Cir. 1982) ................................................................20, 21

<u>Arteaga v. United States,</u>
        711 F.3d 828 (7th Cir. 2013); ........................................................................18

<u>Ashcroft v. Iqbal,</u>
        556 U.S. 662, 129 S.Ct. 1937 (2009) ............................................................21

<u>Bell v. Hood,</u>
        327 U.S. 678, 66 S.Ct. 773 (1946) ..........................................................22, 23

<u>Bell Atl. Corp. v. Twombly,</u>
        550 U.S. 544, 127 S. Ct. 1955 (2007) ............................................................21

<u>Bowles v. Russell,</u>
        551 U.S. 205, 127 S. Ct. 2360 (2007) .....................................................17, 19

<u>Datastaff Technology Group, Inc. v. Centex Construction Corp.,</u>
        528 F.Supp. 2d 587 (ED Va. 2007) ....................................................... 29, 30

<u>Dearing v. United States,</u>
        835 F.2d 226 (9th Cir. 1987) ..........................................................................24

<u>Erickson v. Pardus,</u>
        551 U.S. 89, 94, 127 S.Ct. 2197 (2007) .........................................................20

<u>Felty v. Graves-Humphreys Co.,</u>
        818 F.2d 1126 (4th Cir.1987) ..........................................................................30

<u>Francis v. Giacomelli,</u>
        588 F.3d 186 (4th Cir.2009) ............................................................................21

<u>Gonzales v. United States,</u>
        284 F.3d at 281 (1st Cir. 2002).......................................................................26

Glus v. Brooklyn Eastern District Terminal,
    359 U.S. 231,79 S.Ct. 760 (1959) ................................................. 16

Gould v. United States Dept. of Health and Human Serv.,
    905 F.2d 738 (4th Cir. 1990) (en banc) ....................................... 24

Heckler v. Cmty. Health Servs. of Crawford,
    467 U.S. 51, 104 S.Ct. 2218 (1984) ............................................. 31

Henderson ex rel.Henderson v. Shinseki, ___ U.S.___,
    131 S.Ct. 1197 (2011).............................................................. 18, 19

Holland v. Florida, ___ U.S.___,
    130 S.Ct. 2549 (2010)................................................................... 19

Irwin v. Department of Veteran Affairs,
    498 U.S. 89, 111 S. Ct. 453 (1990) ................................... 15, 16, 18

John R. Sand & Gravel,
    552 U.S. 130, 128 S.Ct. 750 (2008) ............................................ 17

Johnson v. Mueller,
    415 F.2d 354 (4th Cir.1969) ...................................................... 20

Kerns v. United States,
    585 F.3d 187 (4th Cir. Oct. 29, 2009) ...................................*passim*

Kirkendall v. Department of the Army,
    479 F.3d 830 (Fed. Cir. 2007) .................................................... 19

O'Quinn v. Beach Assoc.,
    272 S.C. 95, 249 S.E.2d 734 (1978) ........................................... 31

Reed Elsevier, Inc. v. Muchnick,
    559 U.S. 154 (2010)..................................................................... 17

Santos ex rel. Beato v. United States,
    559 F.3d 189 (3d Cir. 2009) ....................................................... 18

Scarborough v. Principi,
    541 U.S. 401, 124 S.Ct. 1856 (2004) ........................................................ 15

Sebelius v. Auburn Regional Medical Center,
    __U.S. __, 133 S. Ct. 817 (2013)................................................................18

TRW Inc. v. Andrews,
    534 U.S. 19, 122 S. Ct. 421 (2001) .............................................................24

Union Pac. R.R. Co. v. Bhd. Of Locomotive Eng'rs & Trainmen Gen.
    Comm. of Adjustment, Cent. Region,
    558 U.S. 671, 130 S.Ct. 584 (2009) ........................................................... 17

United States ex rel. Humble Oil & Ref. Co. v. Fid. & Cas. Co. of New York,
    402 F.2d 893 (4th Cir.1968) .......................................................................30

United States ex rel. Vuyyuru v. Jadhav,
    555 F.3d 337 (4th Cir. 2009) ................................................................18, 22

Valdez ex rel. Donely v. United States,
    518 F.3d 173 (2d Cir. 2008) .......................................................................30

United States v. Kubrick,
    444 U.S. 120, 100 S.Ct. 352 (1979) .....................................................14, 24

United States v. Wilson,
    699 F.3d 789 (4th Cir. 2012) ......................................................................28

Wahi v. Charleston Area Med Ctr., Inc.,
    562 F.3d 599 (4th Cir. 2009) ......................................................................20

Wherman v. United States,
    830 F.2d 1480 (8th Cir. 1987) ..............................................................24, 25

Wong v. Bebe,
    10-36136, (9th Cir. Oct.  2013) (en banc) ...................................................18

<u>Statutes</u>

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. §  2401 (b) ......................................................................*passim*

28 U.S.C. § 2671 et seq...................................................................8, 9

28 U.S.C. § 2675(a) .......................................................................12, 14

28 U.S.C. § 2680(h) .............................................................................8

S.C. Code § 40-47-110..........................................................................7

S.C. Code § 43-7-60.............................................................................7

<u>Rules of Procedure</u>

Rule 12(b)1, FRCP ......................................................................1, 9, 12

## JURISDICTIONAL STATEMENT

This brief is submitted by appellants in support of their direct appeal from the final order of the Honorable Joseph H. Anderson, Jr., United States District Judge for the District of South Carolina, filed July 25, 2013.  Notice of Appeal was timely filed on August 27, 2013. 28 U.S.C. Sect. 1291

## ISSUES PRESENTED FOR APPEAL

1.  Did the Honorable District Judge err in granting the Government's Motion To Dismiss For Lack of Subject Matter Jurisdiction pursuant to Rule 12(b)(1), F.R.C.P.

2. Did the Honorable District Judge err in considering the Government's factual submissions attached to its Reply Memorandum without allowing the Plaintiffs the opportunity to respond and conduct limited discovery?

3.  Did the Honorable District Judge err in denying the Plaintiffs the opportunity to conduct limited discovery in response to the Government's Reply Memorandum and factual materials where the Court cited extensively from such materials to support its conclusion that the case did not involve intertwined factual and legal issues that would have entitled the Plaintiffs to such discovery?

4.  Did the Honorable District Judge err in considering the factual materials submitted by the Government in its Reply Memorandum and without granting the Plaintiff limited discovery where the Court cited extensively from such factual

1

materials in concluding the case on the grounds of claims accrual and further concluding that Plaintiffs were not entitled to equitable tolling?

5.  Did the Honorable  District Judge err in construing and dismissing the allegations of Plaintiffs' complaint alleging misrepresentation by Dr. Aldrich that supported the Plaintiffs' claims and argument that the case presented intertwined jurisdictional allegations and facts that would entitle the Plaintiffs to respond and conduct limited discovery?

6.  Did the Honorable District Judge err in construing and dismissing the allegations of Plaintiffs' complaint alleging misrepresentation/concealment by Dr. Aldrich that supported the Plaintiffs' claims and argument that the case presented intertwined jurisdictional allegations and facts that would support equitable tolling?

## STATEMENT OF THE CASE

This case is based on the death of Mary Ann Callaham, a patient of Susan L. Aldrich, M.D., who died at the Palmetto Health Baptist Hospital in Columbia, South Carolina near midnight on Oct. 7, 2008, after being discharged from the hospital in the care of her elderly parents on Saturday afternoon, Oct. 3, 2008, without being examined or attended by her  physician or a properly trained representative the Eau Claire Cooperative Health Center.   Dr. Julian Goode Busby, an expert in Gynecology, reviewed various medical records and

2

information provided by Plaintiffs' counsel and offered his affidavit and expert opinion on October 3, 2008, that it was below the standard of care for Dr. Aldrich and/or the Eau Claire Cooperative Health Center to fail to attend and reexamine the patient on the day of discharge based on the patient's condition when examined on October 3, 2008, and on the day of discharge.  J.A. 36-46. Dr. Busby further concluded that a reasonable physician attending the patient on Oct. 4, 2008, "would have recognized the detectable signs of post operative infection and would have performed another examination of the patient and ordered additional laboratory tests to determine if the patient/Mrs. Callaham was suffering a post surgical infection." J.A. 46. The record relied upon by Dr. Busby and his opinion were part of the record that was before the Court.

In summary, Ms. Calllaham's care at Eau Claire Cooperative Health Center began when she was referred for surgery following an MRI and pelvic ultrasound that confirmed her diagnosis of enlarged uterus secondary to multiple enlarged fibroids with complaints of severe abdominal cramps.  On Tuesday, September 30, 2008, she was admitted to the Baptist Hospital and underwent a total abdominal cervical hysterectomy and bilateral oophorectomy that was performed by Dr. Aldridge and her assistant Dr. Ravenel, who were each employed by Eau Claire Cooperative Health Center at the time of Ms. Calllaham's death.  As noted, Ms. Callaham was due to be discharged on Friday, Oct. 3, 2008, but her discharge was

rescheduled by Dr. Aldrich until Saturday, October 4, 2008, because of her complaints of continued abdominal pain. Prior to Ms. Callaham's discharge on October 4, 200 8, Nurse Cassandra Thompson noted that there was a "foul odor detected" in the wound and surrounding skin of the lower abdomen. Neither Dr. Aldrich nor Dr. Ravenel or anyone from Eau Claire Cooperative Health Center visited with Ms. Callam or attended the discharge on October 4, 2008. On October 8, 2008, within hours of Ms. Callam's death, Dr. Aldrich dictated her hospital discharge note concluding that "Her [Callaham's] postoperative course was uneventful - - -." and was discharged on postoperative day 4 with a prescription for pain medications but without mention of the doctorless discharge or Nurse Thompson's note. J.A. 45, 105.

While Ms. Callaham was recovering at home her step-sister visited, and while she was with her she called the doctor's service and talked to Dr. Aldrich about Ms. Callaham's complaints of pain and nausea. Dr. Aldrich assured her the complaints were to be expected following abdominal surgery and that she would prescribe additional medications that was to be picked up at Wal-Mart. J.A. 19, 52, 61, 62. Ms. Foster further recalled that on Tuesday morning, October 7, 2008, that she called the Eau Claire Cooperative Health and was advised to take Ms. Callaham to the Hospital ER. Ms. Callaham, accompanied by her parents, went to the Palmetto Health Baptist Hospital ER where they arrived at approximately 4:00-

4

4:30 p.m. Treatment was begun but Ms. Callaham's condition deteriorated and she died at approximately 11:40 p.m. Dr. Aldrich arrived at or shortly after the time of Ms. Callaham's death. Medical tests performed in the ER that evening, prior to Ms. Callaham's death, revealed that her w.b.c. was elevated and her metabolic profile was significant and that she suffered a significant coronary blockage. The ER doctor made his further impression of possible urinary tract infection. None of this information was discussed with the family members, and the only information they were provided was presented by Dr. Aldrich who informed them that Ms. Callaham died of a heart attack.

On Oct. 15, 2008, the Richland County Coroner's Office issued a "Death Certification" indicating the cause of death was cardiac arrest death and probable sepsis. J.A. 94. A preliminary and incomplete autopsy report was made by Richland County chief pathologist Dr. Clay Nichols on or about Oct. 8, 2008, that reported the results of his autopsy on the same date. J.A. 95-98. The preliminary findings reported III. Breakdown of Pfannensteil wound, IV. Peritonitis - - - VI. Toxicology Pending. J.A. 95. Dr. Nichols left his employment to assume the job as Medical Examiner for the State of North Carolina where he was eventually dismissed following an SBI investigation. Dr. Nichols left his work in this case without completing the autopsy that was not presented until 2011. On Jan. 31, 2011, Bradley J. Marcus, M.D., chief pathologist of the Richland County Coroner's

Office issued his "REPORT OF POSTMORTEM EXAMINATION- - - AMENDED ON 01/31/11 TO REFLECT AMENDED DIAGNOSIS" concluding that Ms. Callaham died of sepsis  "DUE TO PERITONITIS- - - POST-OP INFECTION (STATUS-POST HYSTERECTOMY". J.A. 146-150.

The first occasion the Plaintiffs had the requisite knowledge that the cause of Ms. Callaham's death was due to Dr. Aldrich's failure to attend to Ms. Callaham's hospital discharge was after they were contacted by the Richland County Coroner's office in early 2011 and were advised that Ms Callaham had not died of a heart attack but that she had died of an abdominal infection that was present while she was in the hospital prior to her discharge.

Plaintiffs contend that Dr. Aldrich made false and misleading representations and statements to them and to an investigator from the Coroner's Office and confabulated medical records and omitted significant details from the Hospital Discharge Record and that she submitted post mortem with the intent that Plaintiffs and her colleagues would accept her explanation that Ms. Callaham died as the result of the unavoidable consequences of her poor health and a heart attack and not the failure to attend to her at her hospital discharge or that her failure to provide adequate care to prevent and/or treat the post surgical infection that led to Ms. Callaham's death and to forego any inquiry as to the death of Ms. Callaham. Plaintiffs contended that the only motivation that Dr. Aldrich could possibly have

6

had for the acts as alleged in the Complaint was to protect her own interests and to conceal her malpractice and that there could be no mixed employer/personal purpose to falsify and misstate records of medical treatment and that the very act of falsifying and confabulating a medical record to mask responsibility is uniquely self serving and constitutes a professional and ethical breach of duty and a criminal act as in this case where the decedent was an uninsured Medicaid recipient.[1]  It is alleged that Dr. Aldrich made various misstatements about her responsibility to plan and attend the patient's hospital discharge and provide post-discharge care but instead dictated notes and records creating an impression that she had examined the patient and that there were no unusual findings or signs of an infection and that she had ordered Ms. Callaham be returned to the hospital the afternoon-evening of October 5, 2008. J.A. 99-105.  The Plaintiffs were never aware that Dr. Aldrich

---

[1]    Physicians, surgeons and osteopaths - S.C. Code Sect. 40-47-110 <u>Misconduct constituting grounds for disciplinary action, temporary suspension; review of final actions; conduct subverting security or integrity of medical licensing examination process</u>    (B) Misconduct that constitutes grounds for disciplinary action- - - (9) engaged in  a dishonorable, unethical or unprofessional conduct that is likely to either deceive, defraud or harm the public; (10) used a false or fraudulent statement in a document connected with the licensees practice;- - -.
Medicaid False Claim Law - S.C. Code Sect. 43-7-60 <u>False claim, statement, or representation by medical provider </u> or services to knowingly and willfully make, or cause to be made a false claim, statement or representation of a - -administers or assists in the administration of the state's Medicaid program in order for a provider or facility to qualify or remain qualified under the state's Medicaid program to  - - - or receive reimbursement, payment or benefit for this assistance, goods, or services.

had written a post-mortem note that she placed in the medical record claiming she had ordered the decedent be returned to the hospital ASAP that Sunday evening. J.A. 104.

Plaintiffs filed the Notice Of Intent To File Suit with the attached malpractice affidavit of Dr. Busby on October 5, 2011.  J.A. 36-46.  On January 22, 2012, the Plaintiffs filed suit alleging wrongful death and survival actions, etc., in the Richland County Court of Common Pleas on the basis that Dr. Aldrich's actions of misrepresentation and concealment of her malpractice did not arise within the course and scope of her covered employment and instead were intentional torts excluded by the FTCA by 28 U.S.C. Sect. 2680(h) (Westfall Act) and that the acts alleged were not reasonably necessary to accomplish the purpose of her employment or further her master's business.  J.A. 49-58.

The United States Attorney for South Carolina removed the case on February 29, 2012, based on the boiler plate certification that Dr. Aldrich was acting within the scope of her employment and duties during the occasions alleged in the Complaint.  On March 13, 2012, the Government made a motion to substitute the United States based on the assertion that Dr. Aldrich was entitled to individual immunity under the Federal Tort Claims Act, 28 U.S.C. Sect 2671, et seq. The Court granted the motion in a "Text Order" entered on March 15, 2012. On April 4, 2012, Plaintiff moved to amend the "Text Order" based on the

allegations that Dr. Aldrich was not entitled to individual immunity under the FTCA. (3:12-cv-00579 JFA, ECF Entry Numbers 7, 20)   On March 26, 2012, the Defendant filed a Motion To Dismiss pursuant to Rule 12(b)(1), F.R.C.P. On April 4, 2012, Plaintiffs moved to remand the case based on their contention that the alleged acts and omissions were outside the scope of the Dr. Aldrich's employment and professional duties and were not acts within the scope of her employment as a physician and for which she was otherwise afforded individual immunity under the Federal Tort Claims Act, 28 U.S.C. Sect 2671, et seq.  On May 11, 2012, the Court heard arguments on all pending motions. Although the Government proceeded solely on the basis of its Motion To Dismiss and on April 23, 2012, the United States filed the "Declaration" of Dr. Aldrich stating her factual response to the matters addressed in the Complaint. J.A. 99-108. The Court subsequently denied Plaintiffs' request to conduct discovery limited to the deposition of Dr. Aldrich. (3:12-cv-00579 JFA, ECF Entry Number 33) On May 21, 2012, the Court denied Plaintiffs' Motion To Remand and granted the Government's motion to dismiss, without prejudice, the causes of action for wrongful death and survival. J.A. 9-15.

Following the Court's determination that Dr. Aldrich's various alleged acts and omissions were within the scope of individual immunity granted under the Federal Tort Claims Act, 28 U.S.C. Sect 2671, et seq., the Plaintiffs filed administrative claims supported by all the medical information and records

requested by the Dept. of Health and Human Services including evidence of alleged omissions, misrepresentations, or misstatements by Dr. Aldrich before and after Ms. Callaham's death. J.A. 59-73.  Plaintiffs also provided copies of records by Dr. Aldrich that included the "post mortem" note allegedly confabulated to appear that Dr. Aldrich had ordered that Ms. Callaham be returned to the hospital on Sunday, Oct. 5, 2008, and her hospital discharge record that omitted any of the information regarding an elevated white blood cell count and the patient's condition as reported by Nurse Thompson the morning of Oct. 4, 2008, the "doctorless" discharge day, that also indicated continued nausea, pain and "foul odor detected" at the site of the surgical incision.  In response to the HHS inquiry, Plaintiffs supplied the detailed medical record, the report of Dr. Busby and other documents requested by HHS. J.A. 36-46. On October 12, 2012, William A. Biglow, Acting Deputy Associate General Counsel of the Department of Health and Human Services issued a final denial of the Plaintiffs claims. J.A. 74-75.

Plaintiffs filed the current lawsuit on April 4, 2013. J.A. 16-24.  In response the Defendant filed its Motion to Dismiss and supporting memorandum to dismiss the First Cause of Action-wrongful death and Second Cause of Action-survival, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds that the Court lacked jurisdiction because the Plaintiffs' tort claim was not filed within two years of the date the claim(s) accrued. 28 U.S.C. Sect 2401 (b). J.A. 25-

35.   On June 21, 2013, the Plaintiffs filed their Memorandum In Response To Motion To Dismiss For Lack of Subject Matter Jurisdiction. J.A. 76-87.  On July 1, 2013, the Defendant filed its Reply To Plaintiffs Response with Exhibits 1-4, including the original autopsy report, death certificate and factual declaration of Dr. Aldrich.

On July 25, 2013, the Court heard arguments addressing the Government's Motion To Dismiss. J.A. 109-128. The Plaintiff argued the positions set forth in its memorandum filed June 21, 2013, and requested to be allowed to conduct limited discovery and/or convert the 12(b)(1) motion or respond to the attachments and affidavit submitted by the Defendant on July 1, 2013. J.A.  119-123. On July 29, 2013, the District Judge Court issued an Order granting the Government's Motion To Dismiss without allowing further reply or discovery. J.A. 129-145.  From that Order, Plaintiff issued their Notice of Appeal. J.A. 152.

## SUMMARY OF ARGUMENT I

The Appellants argue that the Honorable District Judge erred in failing to conclude that the time filing provisions of 28 U.S.C. Sect. 2401 should properly be considered "claim-processing" requirements and not "jurisdictional". Further that proper consideration of the Plaintiffs' allegations and case would have established that the key central jurisdictional and factual issue presented involved Dr. Aldrich's attempt to misrepresent/conceal her failure to attend Ms. Callaham's

hospital discharge and address her clear signs of post-op infection and that such matters created intertwined factual and legal issues that should have entitled the Plaintiffs to limited discovery as provided in the case of Kerns v. United States, 585 F.3d 187 (4th Cir. 2009) to further establish the requirements of equitable tolling of 28 U.S.C. 2401(b).  Further, that the procedure followed by the District Judge of allowing the Government to turn its facially based 12(b)(1) Motion to Dismiss for Lack Of Subject Matter Jurisdiction into a factual attack by filing its Reply Memorandum with attachments presenting factual matters and thereafter failing to allow the Plaintiff to present sur-reply and grant Plaintiffs' request for limited discovery to address the factual matters presented was unfair and improper. (Issues 1-4)

## STANDARD OF REVIEW

1.  The Order on appeal concludes that the provisions of 28 U.S.C. Sect. 2401(a) and Sect. 2675(a) of the Federal Tort Claims Act were not subject to equitable tolling and accordingly granted the Government's Motion To Dismiss For Lack of Subject Matter Jurisdiction pursuant to Rule 12(b)(1), F.R.C.P. The Government's motion initially claimed the statute was jurisdictional and the motion appeared to be "facially" limited to the allegations of the complaint. However, on June 6, 2013, it attacked the factual allegations of the Complaint in its Reply To Plaintiff's Response To Motion To Dismiss For Lack of Jurisdiction,

12

with attached exhibits addressing various factual matters. The Court decided the case without allowing the Plaintiffs to reply or conduct limited discovery regarding such matters. J.A. 93-108; 119, ll. 17-21; 120, ll. 7-24.   Accordingly, when considering the appeal of an action granting a motion to dismiss for lack of subject matter jurisdiction in which the lower court permitted a factual attack of the allegations of the complaint the appellate court is free to decide questions of law with no particular deference to the lower court and to find facts in accordance with its views of the preponderance of the evidence. Kerns v. United States, 585 F.2d 187 (4th Cir. 2009).

2.   The District Judge determined in this instance, after accepting the Government's factual materials offered in its Reply Memorandum and failing to grant the Plaintiffs limited discovery in response  that there were no intertwined jurisdictional facts and facts central to a tort claim that were inextricably intertwined (J.A.136) and further determined that the "General Allegation(s)" of Plaintiffs Complaint (J.A. 18-20) did not address or support the allegations of Plaintiffs' actions for wrongful death and survival actions as a basis for finding equitable tolling based on misrepresentation/concealment. (J.A. 135,140). Accordingly, when considering the appeal of an action granting a motion to dismiss for lack of subject matter jurisdiction in which the lower court permitted a factual attack of the allegations of the complaint the appellate court is free to

decide questions of law with no particular deference to the lower court and to find

facts in accordance with its views of the preponderance of the evidence. Kerns v.

United States, 585 F.2d 187 (4th Cir. 2009).

ARGUMENT 1

The Honorable District Judge erred in granting the Government's Motion To Dismiss For Lack of Subject Matter Jurisdiction pursuant to Rule 12(b)(1), F.R.C.P. without allowing limited discovery or sur-reply on the grounds that Plaintiffs' pleadings and claims did not involve intertwined factual and legal issues that would have allowed the Plaintiffs to further establish equitable tolling of the requirements of 28 U.S.C. 2401(b). (Issues 1, 2, 3, 4)

The FTCA contains three timing rules that govern when a plaintiff may file a

claim against the United States in the district court: First, 28 U.S.C. § 2675(a)

establishes an administrative exhaustion requirement, which states that "[a]n action

shall not be instituted upon a claim against the United States . . . unless the

claimant shall have first presented the claim to the appropriate Federal agency and

his claim shall have been finally denied by the agency."  Second, one statute of

limitations in § 2401(b) sets a two-year deadline within which a claimant must

present his claim "to the appropriate Federal agency . . . after such claim accrues."

Id. § 2401(b); see United States v. Kubrick, 444 U.S. 111, 119–21 (1979). Finally,

§ 401(b) also establishes a second limitations period—that "[a] tort claim against

the United States shall be  forever barred . . . unless action is begun within six

14

months after the . . . final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b).

A.  Equitable Tolling of FTCA Claims

Irwin v. Department of Veterans Affairs, 498 U.S. 89 (1990), sets forth the "general rule .

govern[ing] the applicability of equitable tolling in suits against the Government." *Id.* at 95. That

case considered whether the "rule of equitable tolling" applied to an untimely Title VII claim brought against the government. *Id.* at 94–95. Noting that "[t]ime requirements in lawsuits between private litigants are customarily subject to equitable tolling, " *Irwin* held that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Id.* at 95–96 (internal quotation marks omitted). A precise private analogue is not required; only that there be sufficient similarity between the suits. Scarborough v. Principi, 541 U.S. 401, 422, 124 S.Ct. 1856 (2004).  In so establishing the presumption in favor of equitable tolling, the Court recognized that once the government has consented to be sued through a waiver of sovereign immunity, "making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver." Irwin, 498 U.S.

at 95, 111 S.Ct. 453. Instead, "[s]uch a principle is likely to be a realistic assessment of legislative intent as well as a practically useful principle of interpretation." Id. Moreover, it cautioned that "we must be careful not to assume the authority to narrow the waiver that Congress intended, or construe the waiver unduly restrictively." Id. at 94, 111 S.Ct. 453 (quoting Bowen, 476 U.S. at 479, 106 S.Ct. 2022) (internal quotation marks omitted).  The Irwin Court also cited the case of   Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 231, 79 S.Ct. 760 (1959), which held that despite the statutory command, "No action shall be maintained ... unless commenced within three years from the day the cause of action accrued," because the defendant's fraud caused the plaintiff to let the filing period lapse, the defendant was equitably estopped from using the late filing to bar the action.  Although Glus is an equitable estoppel case,  Irwin relied on it for the proposition that, "We have allowed equitable tolling in situations ... where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." 498 U.S. at 96 n. 4, 111 S.Ct. 453 (emphasis added). Certainly, the availability of the various equitable remedies for relaxing limitations periods are governed by differing considerations, but as the Supreme Court makes clear, these remedies are sufficiently similar that precedents relating to the availability of one are applicable to the others.

16

Some statutes of limitation are "more absolute " and do not permit "court[s] to consider whether certain equitable considerations warrant extending a limitations period." John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 133–34 (2008). "As convenient shorthand, the Court has sometimes referred to the time limits in such statutes as 'jurisdictional.'" *Id.* at 134 (citing *Bowles v. Russell*, 551 U.S. 205, 210 (2007)).  In a series of recent cases, the Supreme Court has "pressed a stricter distinction between truly jurisdictional rules, which govern 'a court's adjudicatory authority, 'and nonjurisdictional 'claim-processing rules, ' which do not." Gonzalez v. Thaler, 132 S.Ct. 641, 648 (2012) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 454–55 (2004) (emphasis added)).  The Court has now indicated that the term "'[j]urisdiction[al]' refers to a court's adjudicatory authority . . . [and] properly applies *only* to prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) implicating that authority." Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 160–61 (2010) (internal quotation marks and citation omitted). Under this narrow interpretation, the term "jurisdictional" "refers [only] to a tribunal's power to hear a case." Union Pac. R.R. Co. v. Bhd. Of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region, 558 U.S. 67, 81 (2009) (internal quotation marks omitted). So-called "claim-processing rules, " by contrast, "are rules that seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at

17

certain specified times." Henderson ex rel.Henderson v. Shinseki, 131 S.Ct. 1197, 1202–03 (2011). "To ward off profligate use of the term 'jurisdiction, ' [the Court has] adopted a 'readily administrable bright line' for determining whether to classify a statutory limitation as jurisdictional." Sebelius v. Auburn Reg'l Med. Ctr., 133 S.Ct. 817, 824 (2013) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006)). Specifically, courts must now ask "whether Congress has 'clearly state[d]' that the rule is jurisdictional; absent such a clear statement . . . 'courts should treat the restriction as nonjurisdictional in character.'" *Id.* (quoting *Arbaugh*, 546 U.S. at 515–16). Congress need not "incant magic words in order to speak clearly." *Id*

Our Circuit and others have followed the Irwin rationale and cautioned the "jurisdiction" terminology used in the government-defendant equitable tolling context of Section 2401 (b) has been imprecisely applied. United States v. Wilson, 699 F. 3d 789, 793-796 (4ᵗʰ Cir. 2012); . United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 348 (4th Cir.2009); Kerns v. United States, 585 F.3d 187 (4th Cir. Oct. 29, 2009). Additionally the Circuit decisions in Wong v. Bebe, 10-36136, (9ᵗʰ Cir. Oct. 2013) (en banc); Arteaga v. United States, 711 F.3d 828, 832–33 (7th Cir. 2013); Santos ex rel. Beato v. United States, 559 , 559 F.3d 189 (3d Cir. 2009) all clearly holding that § 2401(b) is subject to equitable tolling.

Also see <u>Kirkendall v. Department of the Army</u>, 479 F.3d 830 (Fed. Cir. 2007)

[finding equitable tolling of 5 U.S.C. § 3330a-Veteran's preference rights].

While courts "[have] no authority to create equitable exceptions to

jurisdictional requirements, " <u>Bowles</u>, 551 U.S. at 214, nonjurisdictional claim-

processing requirements remain "subject to [*Irwin*'s] rebuttable presumption in

*favor* of equitable tolling." <u>Holland v. Florida</u>, 130 S.Ct. 2549, 2560 (2010)

(internal quotation marks omitted).  Most recently the Ninth Circuit (en banc) in

<u>Wong v. Bebe</u>, No. 10-36136, supra. __ , held that § 2401(b) falls squarely in the

claim-processing category and is nonjurisdictional and nothing in the text of the

statute suggests that it is anything other than a straightforward filing deadline—a

"quintessential claim-processing rule." <u>Henderson</u>, 131 S.Ct. at 1203.

Despite the caution of the District Judge in this case, the decisions of this

Circuit indicate that it would hold that § 2401(b) falls squarely in the claim-

processing category and is not jurisdictional. J.A. 134-136.

B.  <u>Court's procedure and determination that the Plaintiffs' claims be dismissed for lack of   subject matter jurisdiction</u>

The fundamental question presented is when the Plaintiffs claim(s) accrued

and whether the alleged conduct of Dr. Aldrich gives rise to equitable tolling.  The

Order on appeal concludes that the provisions of 28 U.S.C. Sect. 2401(a) and Sect.

2675(a) of the Federal Tort Claims Act were not subject to equitable tolling.

19

As noted previously, the Government's motion initially appeared to be "facially" limited to the allegations of the complaint but subsequently attacked the factual allegations in its Reply To Plaintiff's Response To Motion To Dismiss For Lack of Jurisdiction, with attached exhibits addressing various factual matters. The Court indulged this unusual procedure and decided the case without allowing the Plaintiffs to further reply or conduct limited discovery regarding such matters. J.A. 93-108; 119, ll. 17-21; 120, ll. 7-24.  It is fundamental that "When a defendant makes a facial challenge to subject matter jurisdiction, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Kerns v. United States, 585 F.2d 187, 191-192 (4th Cir. 2009)  In such a circumstance the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations and the motion must be denied unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.  Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197  (2007); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982); Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir.1969).  However, the "[f]actual allegations must be enough to raise a right to relief above the speculative level and have enough facts to state a claim to relief that is plausible on its face.'" Wahi v. Charleston Area Med Ctr., Inc., 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting

*Bell A. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)); Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009). See Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir.2009) (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955). Nevertheless, when considering a 12(b)(6) motion to dismiss, the Court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his or her claims, not whether the plaintiff will eventually prevail. Twombly, 550 U.S. at 563. In the alternative, the defendant can contend, as the Government eventually did in its Reply Memorandum in this case, that the jurisdictional allegations of the complaint are not true. In such a case where the defendant challenges the factual predicate of the subject matter jurisdiction, a trial court may go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations and *where the jurisdictional facts are intertwined with the facts central to the merits of the dispute "a presumption of truthfulness should attach to the plaintiff's allegations. Id. In that situation the defendant has challenged not only the court's jurisdiction but also the existence of the plaintiff's cause of action. A trial court should then afford the plaintiff the procedural safeguards-such as discovery-that would apply where the plaintiff (is) facing a direct attack on the merits.* Kearns v. United States, Id. at 192-193, citing Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Finally, *[W]hen the jurisdictional facts and the facts central to a tort claim are inextricably*

21

*intertwined, the trial court should ordinarily assume jurisdiction and proceed to the intertwined merits issues. See United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 348 (4th Cir.2009). As the Supreme Court has explained with respect to such situations, a trial court should dismiss under Rule 12(b)(1) only when the jurisdictional allegations are " clearly ... immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial and frivolous. Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946)."* <u>Kearns</u> at 193.   Despite the Plaintiffs' request to conduct limited discovery the District Judge failed to grant such request and after accepting the Government's factual materials determined that there were no intertwined jurisdictional facts and facts central to a tort claim that were inextricably intertwined. J.A. 119, 120, 122, 123, 136.

The Government's "procedure" of converting its "facially" limited Motion To Dismiss to a factual attack of the allegations of the Complaint in its Reply Memorandum without affording the Plaintiffs the opportunity to respond and conduct limited discovery as to the factual matters and address the "new" motion is fundamentally unfair.  The key issue on appeal-whether Dr. Aldrich attempted to misrepresent/conceal her failure to attend Ms. Callaham's hospital discharge and address her clear signs of post-operative infection-is also an issue central to the merits of her FTCA claim and as in Kerns, maintains that the district court should

have assumed jurisdiction and authorized discovery on the misrepresentation/concealment allegations. The Appellants further maintain that the district court failed to apply the correct legal standard and presumption and should have determined that the jurisdictional facts and the facts central to the claim are inextricably intertwined, and whether the jurisdictional allegations were "clearly ... immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial and frivolous before reaching its decision. Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

Instead of following the Kerns procedure the District Judge proceeded with a recitation of facts apparently gleaned from some of the factual materials filed by the Government, mischaracterized or overlooked the allegations of misrepresentation/concealment unrelated to any separate cause of action and determined that the facts central to the claim were not inextricably intertwined with the jurisdictional facts. J.A. 137, 138, 140. The Court then, without the "burden" of having to follow the Kerns procedure and allow discovery, concluded on the basis of "claims accrual" that the Plaintiffs knew or should have known of the consequences of the phone conversation between the decedent's sister and Dr. Aldrich, the unpublished preliminary autopsy report, the unreported details of the decedent's hospital discharge, etc. and therefore was on notice and barred by Section 28 U.S.C. 2401(b). J.A. 141-143. Finally, the Court made an evaluation of

23

the weight of the alleged misrepresentations and concluded that the evidence was "outweighed" and that in any event that they did not act reasonably. J.A. 143

An FTCA claim generally accrues at the time of the Plaintiff's injury. United States v. Kubrick, 444 U.S. 111, 100 S. Ct. 352 (1979) Under that view the Plaintiffs claims would have expired before they were aware of Dr. Aldrich's malpractice and her alleged scheming to hide her failures to attend and treat Ms. Callaham. The Kubrick Court also recognized in dictum that in medical malpractice cases the accrual period is thought to extend "until the Plaintiff has discovered both his injury and its cause". Id at 100 S. Ct. 358. Accord: TRW Inc. v. Andrews, 534 U.S. 19 (2001). An FTCA claim accrues "when the plaintiff knows, or in the exercise of due diligence, should have known both the existence and the cause of his injury." Gould v. United States Dept. of Health and Human Servs., 905 F.2d 738, 742, 746 (4th Cir.1990) (en banc), cert. denied (involving a medical malpractice case and application of the discovery rule) The Gould Court id at 742, also cited Dearing v. United States, 835 F.2d 226 (9th Cir. 1987) and Wherman v. United States, 830 F.2d 1480 (8th Cir. 1987) for the proposition that a medical malpractice claim does not accrue under the FTCA until the plaintiff discovers, or reasonably should have discovered, his injury and its causes. In the Dearing case the Ninth Circuit noted "The date the Dearings reasonably should have discovered the existence and cause of Michelle's injuries is a mixed question

of fact and law. Because, like negligence, this question requires a court "to determine, by reference to the 'data of practical human experience,' whether an individual acted 'reasonably' by community standards," McConney, 728 F.2d at 1204" Id at 228. The Dearing Court noted that based on the Government physician's reassurance that medical complications experienced by the patient were normal "we cannot say that the Dearings clearly should have known before Michelle was tested in September 1979 that Michelle was injured and that the government was responsible. Id at 228.  In the <u>Wherman</u> case the Plaintiff suffered an extended undiagnosed illness and was ineffectively treated at a V.A Hospital. After leaving the VA system he was diagnosed and treated. In opposing the Government's attempt to dismiss the claim based on the statute of limitations, Wherman asserted that the Government is precluded from raising a statute of limitations defense because the VA physicians concealed material facts including alternative surgical methods of treatment and persuaded him that his worsening condition was the natural progression of the disease. Wherman claimed he did not discover the truth, nor could he in the exercise of due diligence have done so, he asserts, until 1984, when he sought help outside the VA and that such concealment, if fraudulent, prevented the running of the statutory period until the plaintiff discovers or by reasonable diligence could discover the basis for the claim. The Circuit Court held that "any notice Wehrman received was offset in large part, if

25

not entirely, by the VA staff's repeated advice to him not to have surgery and that even if a diligence inquiry would apply in a continuing treatment context, the VA's affirmative actions to dissuade Wehrman from surgery ought at least to be a factor, along with his knowledge of the deterioration and severity of his condition, in analyzing whether Wehrman knew or should have known that there may have been negligence. This is particularly so at the summary judgment stage, as there is no evidence that Wehrman knew or should have known whether the doctors' representations accorded with recognized medical and surgical practice." Id at 1486.

The findings and conclusions of the District Judge in this case as to the issue of claims accrual are speculative and incomplete as a result of the failure to follow the Kerns precedent and  to not bury his head in the sand and that something less than definite knowledge is required so that a medical malpractice claim has accrued "once a plaintiff knows of the injury and its probable cause." Gonzales v. United States, 284 F.3d at 28, 289 (1st Cir. 2002)  According to the factual "Declaration" of Dr. Aldrich that was filed on July 1, 2013 as Exhibit #4 to the Government's Reply To Plaintiff's Response To Motion To Dismiss, there simply was no malpractice and accordingly, *ipso facto*, no possible concealment. J.A. 99-103.

26

## SUMMARY OF ARGUMENT II

The Appellants argue that the Honorable District Judge erred in concluding that the Plaintiffs failed to demonstrate sufficient evidence of misrepresentation/concealment by Dr. Aldrich to support the Plaintiffs' claims for equitable tolling and request for limited discovery. (Issues 5, 6)

## ARGUMENT II

<u>The Honorable District Judge erred in concluding that the Plaintiffs had not demonstrated sufficient evidence of misrepresentation/concealment by Dr. Aldrich and Plaintiffs' claims were not entitled to equitable tolling.</u>  (Issues 5, 6)

The District Judge apparently overlooked or dismissed the "General Allegation(s)" of Plaintiffs' Complaint detailing the alleged misrepresentation/concealment.[2] (J.A. 18-20) Those allegations supported each

---

[2] 16. - - - on the evening of Ms. Callaham's death, Dr. Aldrich came to the hospital emergency room where Ms. Callaham was being attended and offered statements to the attending staff  and the Richland County Coroner regarding her hospital discharge information and post hospital care that failed to disclose and actively concealed her failure to attend to the decedent and to attend or arrange for another associated physician to examine Ms. Callaham prior to her hospital discharge and intentionally misrepresented her communications with the patent and her family and her failure to prescribe and attend the decedent following her hospital discharge.

17. - - - Dr. Aldrich - - - assumed a duty to accurately and diligently make a record of the patient's care according to the legal requirements, professional standards and protocols governing the care and treatment of her patient and not to withhold, omit or alter the details of Ms. Callaham's medical care.

18. - - - Dr. Aldrich knew - - - that Ms. Callaham's family members and others would rely on her instructions and account of the care, instructions and orders she

claimed to have provided for the care of Ms. Callaham and on the accuracy of her medical record and report of such care.

19. - - - that despite the duty to present an accurate record of her care for Mary Callaham, Dr. Aldrich's statements and the record of care she created concerning the patient's hospital and post hospital care omitted and/or misrepresented and/or confabulated the actual care and instructions she made on and after October 3, 2008, in the following particulars: (a) - - - made various post-mortem statements and entries in the record documenting her care of the decedent that omitted important details of Ms. Callaham's condition prior to and following her discharge from the hospital, and she actually created an alleged "factual account" concerning Ms. Callaham's care and post hospital care after the patient's death that included a note regarding a conversation with the decedent's sister, Linda Foster, claiming that on Sunday October 5, 2008 that she advised Ms. Foster to immediately (ASAP) take Ms. Callaham back to the hospital;

(b) - - - also misrepresented the post surgical account of her care of Mary Callaham to the Richland County Corner investigating the death and to the various staff and physicians that were attending Ms. Callaham on October 7, 2008, by omitting the important fact that she had discharged Ms. Callaham from the hospital three days earlier without examining her and without revealing the patient's condition prior to discharge and the symptoms of post operative infection and the actual advice given to Linda Foster and the confabulated account and advice to bring Ms. Callaham to the hospital ASAP.

20. - - - Dr. Aldrich's account to the Richland County Corner, her colleagues and other physicians attending Ms. Callaham and later recorded in the hospital record failed to disclose:

(a) That on Oct. 3, 2008, she had ordered that Ms. Callaham was to be discharged on October 4, 2008, without performing or arranging for any physician to examine the patient prior to discharge and without considering the record and nursing record and information that was thereafter recorded prior to Ms. Callaham's discharge and including that she had a history of an elevated WBC and consistent complaints of high levels of abdominal pain and nausea during her hospital stay and that the nursing information recorded on the morning of October 4, 2008, included clear signs of infection; (b) That on Oct. 3, 2008, she had ordered Ms. Callaham was to be discharged on October 4, 2008, without performing or ordering additional laboratory tests to determine if Ms. Callaham was suffering a post surgical infection; (c) That during the post-op recovery Dr. Aldrich claimed to have returned a phone call from a family member concerned with Ms. Callaham's home recovery and at which time she - - - referred to the complaints as ., 528F.Supp. 2dbe returned to the hospital ASAP.

28

cause of action including the wrongful death and survival actions and provided a prima facie showing of concealment sufficient to support the claim of equitable tolling and to allow the Court to invoke jurisdiction and proceed with discovery at least as to the key factual and jurisdictional issue for determination of whether Dr. Aldrich attempted to misrepresent/conceal her failure to attend Ms. Callaham's hospital discharge and address her clear signs of post-operative infection.

Although the Supreme Court has not adopted a per se rule prohibiting the application of equitable estoppel against the government under any circumstances, it has suggested that if equitable estoppel is available against the government some form of affirmative misconduct must be shown in addition to the traditional requirements of estoppel. As noted in <u>Datastaff Technology Group, Inc. v. Centex</u>

---

21. - - - the import and intent of Dr. Aldrich's statements and post mortem note and discharge record and the omissions and misstatements was to mislead and attempt to shift the responsibility for the patient's care and the failure to treat and to conceal her failure to examine and care for Ms. Callaham from approximately the afternoon of October 3, 2008, through the date of death on October 7, 2008.

22. - - - despite Dr. Aldrich's responsibility to comply with the applicable professional duties and procedures to timely and accurately record entries concerning Mary Callaham's care and her professional and ethical responsibilities of candor that she failed to perform such duties, misrepresented the care of her patient and caused others to rely on her misrepresented record of care to conceal her failure to make sound and timely medical care decisions for Mary Callaham that proximately resulted in the painful and slow death of her patient from an untreated massive infection.

23.- - -      the actual intent and effect of the Defendant's acts and omissions was to conceal and forestall any legal and/or professional investigation of her acts and omissions.

Construction Corp., 528 F.Supp. 2d 587 (ED Va. 2007), citing from United States ex rel. Humble Oil & Ref. Co. v. Fid. & Cas. Co. of New York, 402 F.2d 893, 897 (4th Cir.1968), the doctrine of equitable estoppel is a "well-established concept invoked by courts to aid a party who, in good faith, has relied, to his detriment, upon the representations of another."  Based on "the maxim that no man may take advantage of his own wrong," equitable estoppel bars a statute of limitations defense by a defendant who, "by his conduct, lulls another into a false security, and into a position he would not take only because of such conduct." Humble Oil, 402 F.2d at 897.  *In this circuit, a plaintiff need not demonstrate actual fraud or deception by a defendant to invoke equitable estoppel.* (emphasis added) Id. at 898. Rather, equitable estoppel may apply where a defendant makes no intentional misrepresentations, but merely takes actions it "should unmistakably have understood would cause the [plaintiff] to delay filing his charge." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir.1987) (quoting Price v. Litton Bus. Sys., 694 F.2d 963, 965-66 (4th Cir.1982)). Also see Valdez ex rel. Donely v. United States, 518 F.3d 173 (2d Cir. 2008) (Government misconduct or concealment is not necessary to invoke the doctrine of equitable tolling.)

A plaintiff must also demonstrate that it actually and reasonably relied on these misrepresentations. Id. at 1128-29; Humble Oil, 402 F.2d at 898 (citing Bergeron v. Mansour, 152 F.2d 27, 30 (1st Cir.1945)). Thus, "[i]f, at the time when

30

he acted, such party had knowledge of the truth, or had the means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means, he cannot claim to have been misled by relying upon the representation or concealment." Heckler v. Cmty. Health Servs. of Crawford, 467 U.S. 51, 59-60 n. 10, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984).  In other words, it must have been the defendant's misrepresentations and not the plaintiff's own failure to act, that caused the plaintiff to miss the filing deadline.

To prove constructive fraud under South Carolina law, a plaintiff must show all elements of actual fraud, except the element of intent, and it is sufficient to allege the defendant ought to have known of the misrepresentation of a material fact made or omitted innocently or negligently, and the injured party had a right to rely on such representation and was damaged as a result of his reliance upon the misrepresentation.  O'Quinn v. Beach Assoc., 272 S.C. 95, 249 S.E.2d 734 (1978) Thus, in certain pertinent respects, the elements of constructive fraud in South Carolina are essentially similar to the elements of equitable estoppels.  In order to establish constructive fraud, the Plaintiffs must prove that Dr. Aldrich and Eau Claire Cooperative Health Center made misrepresentations and/or omissions, and that the Plaintiffs reasonably relied on those matters.  The allegations of the Complaint (par. 18-23) clearly allege that the Plaintiffs relied on Dr. Aldrich to

31

provide accurate information and not to confabulate and misrepresent and conceal the material information that would have revealed that Dr. Aldrich: (1) had access to the hospital record and statement of Nurse Thompson documenting that Ms. Callaham was suffering from an infected surgical site when she was discharged from the hospital without consultation or examination by any physician; (2) never told anyone to return Ms. Callaham to the hospital ASAP on October 5, 2008; (3) prepared and confabulated a hospital discharge record after Ms. Callaham's death that omitted the important details of Ms. Callaham's infection at the time she was discharged; (4) knew Ms. Callaham did not die of a heart attack as she advised the family; (5) that never advised any of the Plaintiffs of the actual cause or suspicion of the cause of Ms. Callaham's death.

The Appellants maintain that the District Judge failed to apply the correct legal standard and presumption that should have followed from consideration of the pertinent allegations of the complaint and that the nature and extent of Dr. Aldrich's misrepresentations and concealment were sufficiently alleged and addressed to the extent that the District Judge should have allowed limited discovery as to the key issue on appeal and central to the merits of the claim-whether Dr. Aldrich attempted to misrepresent/conceal her failure to attend Ms. Callaham's hospital discharge and address her clear signs of post-operative infection before considering the Government's Motion To Dismiss.

<u>CONCLUSION</u>

For all of the reasons presented the Plaintiffs' request the Court to reverse the Order of the District Court and remand the case for further proceedings and trial and grant such other and further relief as it deems just and proper.

January 22, 2014

*S/ Donald E. Jonas*

Donald E. Jonas, Esquire,  I.D. # 2221
PO Box 99
Lexington, SC 29071
803-309-2483/803-609-1484
jonasatty@gmail.com
ATTORNEY FOR THE APPELLANTS

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)


Certificate of Compliance with Type-Volume Limitation, Typeface Requirements and Type Style Requirements

1.    This brief complies with the Type-volume limitation of Fed. R. App. 32(a)(7)(B) because:

    The word count of this brief is   8,248 words.


2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    This brief has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman, 14 point.


January 22, 2014

                                        *S/ Donald E. Jonas*
                                        Donald E. Jonas, Esquire

34

CERTIFICATE OF SERVICE

In accordance with Rule 25 of the Rules of the United States Court of Appeals for the Fourth Circuit, I hereby certify that I have this January 22, 2014 filed the required copies of the foregoing Opening Brief of Appellants and Joint Appendix in the Office of the Clerk of the Court, via hand delivery and have electronically filed the Opening Brief of Appellants and Joint Appendix using the Court's CM/ECF system which will send notification of such filing to the following counsel:

Adam C. Jed
Mark B. Stem
U.S. Department of Justice
Civil Div. Appellate Section, Room 7240
950 Pennsylvania Ave., NW.
Washington, DC 20530
adam.c.jed@usdoj.gov
mark.stem@usdoj.gov

Christie V. Newman
Office of the United States Attorney
1441 Main Street, Suite 500
Charleston, SC 29401
Christie.Newman@usdoj.gov

*Counsel for Appellee*

*S/ Donald E. Jonas*
Donald E. Jonas, Esquire

35